This time we'll hear Robinson v. Sessions. Good morning. Paloma Capana representing the Plaintiff Appellants. In the ten years since the United States Supreme Court handed down the landmark decisions of Heller and McDonald, just about every case in the United States concerning the Second Amendment has sought to overturn a piece of legislation as being unconstitutional. Today we stand in the very unusual position of seeking to uphold the law, and specifically pieces of the Brady Act, in a case where the United States Department of Justice, on appeal, has admitted that a program we alleged below is actually fully functional and is ongoing, and in our characterization amounts to widespread spying on Americans, on domestic soil, without a warrant. You're not challenging the Brady law itself. We are not. So to that extent, there's the issue of your standing and whether there's any injury that you can allege here from the program you're challenging. That is correct. So help us out with why you think you do have standing. Yes. This particular statute allows specifically for the government to get a warrant. It really is that simple. You don't claim you're on the list or that any of your clients have experienced any delay or anything like that. That is correct. But the sin begins from the moment that the ATF Form 4473 is submitted through the FFL and hits the hands of the FBI. At that moment, they are exceeding statutory jurisdiction, where they can only check the databases to see if the individual customer is a disqualified person. Where is the limit on the databases? The limit is at 18 U.S.C., Section 922G, subsections 1 through 9. Disqualified persons who are convicted felons, convicted misdemeanors, persons who have renounced their American citizenship. Yes. Would they be precluded from sending a message with name, date of birth, all identifying information to the Department of Defense, saying it's recently come to our attention that when some of your men and women get convicted, those convictions don't end up in the database. Please help us out here and check this out. Is that a problem under your argument? It is not. Why? The Due Process Clause of the United States Constitution is the very embodiment of the disqualified sections at subsections 1 through 9. If a person has actually been formally convicted, as in the previous and recent case that you reference, it is possible for DOD to make that requested referral for a record. Mind you, and I don't want to sidetrack. That's not the idea. We're making it to DOD. Right. What you're saying, and all of us grew up, I actually was a U.S. attorney during the time immediately post-9-11, where we were checking every database possible to determine whether there were people out there that the government and the United Forces, including state and local law enforcement, were viewing as a possible threat. Yes. And there's a problem with checking that list to see if the person applying for a firearm is on that list and then subjecting that to further inquiry? There's no problem with checking the terrorist screening database. There's no problem with checking the VGOT. We have no objection to that. But you may not use the data from the ATF Form 4473. This is not a statute that provides general authority with exceptions when it cannot be used. This is a statute that says it can only be used in the very specific circumstances of inquiring whether a person is a disqualified person, and that term is defined very specifically at law and in conformance with the Due Process Clause. Right, but the disqualified person definition is extensive. Yes. It's not limited simply to persons convicted. It reaches fugitives. It reaches unlawful users of drugs. It refers to people who have mental defects, who are illegal, who are dishonorably discharged, who have renounced their citizenship. I mean, I could go on and on. To that extent, I'm not sure how using the database cannot be seen as consistent with the purpose to identify such persons, because they're not all going to be identified through criminal record checks. That is correct. But let's just take one example that you listed, Judge Reagy, the involuntary commitment to a mental institution under G-4. It is very important when looking at the Brady Act that one also— It doesn't have to be involuntary. It does when you look to the implementing regulations. It is not enough to look to the disqualified person's status, particularly for G-4, without looking at the implementing regulations. I have two cases— What's the problem, though? As I said, given this breadth, and what is the problem with there being a database that could potentially capture any number of these disqualified people? Because they are not disqualified people. An alleged terrorist with no known metrics— They're disqualified. That's correct. You can't say they're not disqualified people. Now would you answer her question? But if she's asking can't there simply be a broader database, meaning the TSDB, we don't know what that metric is. Right, but terrorist databases can't cover any number of illegal aliens, persons who may have renounced their U.S. citizenship, dishonorable— I mean, terrorists come in all shapes and forms, and so many of them may fit these disqualified criteria. Right, and if they do fit the disqualified criteria, if they are one of the 190 people out of the alleged 2,233 matches out of 222 million transactions, then they get denied. All right, but you're saying they can't check this database because it's not probative of what they are authorized to do under the law. That is correct. And that's not apparent to me. Quite the contrary, it seems that terrorist databases might reveal any number of disqualified persons. No, that is not true. Well, you say that, but you're going to have to persuade me with either a factual or at least a reasoned argument. I don't think that I do, because when you look at the implementing regulations at 22 CFR Section 25 and its subparts, it is very clearly defined which databases the FBI may look to. And the TSDB and the VGTOF are not part of that list. They are not listed in the statutory disqualifying factors. The AG's office sought for 10 years to get congressional authority. It's a source of information. They are not factors. It's a source of information that you want to say. Anybody, any Tom, Dick, and Harry or Susie or Sally can come in and say, I want to buy a gun, and you can't look to see whether I'm disqualified at any information reasonably available to you. No, that's not true. Yes, it is. That's exactly what's true, because that database, as far as I'm concerned, is a source of information that at least raises an argument as to whether that person needs to be further checked on. A person who matches the database that the government is seeking to use it for is not a disqualified person. And Congress has said for 10 years and numerous bills, they are not going to make it a disqualified person. Though the answer here that the government is looking for is congressional authority. Excuse me. You cannot use the list, as I understand your argument, or as I would articulate your argument, you cannot use the list to say you are disqualified. But you can use the list, and I don't see any reason why not, but you can persuade me otherwise. You can use the list to say you are on the list, and therefore you need to be further checked to see whether, you know, did you have some dysfunctional outburst on an airplane that indicates you're mentally unstable. But if that would be the case, then why does the Brady Act contain a warrant provision? Because that ensures that they're against abuse here. But the question is not we're not here to answer your questions. You have to persuade us that there was error here. But that is part of the persuasion. This statute, unlike Section 702, unlike your prison cases, unlike your upstream cases, all of these cases that the Second, Third, and Fourth Departments have all very recently decided, the government has admitted it is actually using the data. Every one of the plaintiffs has purchased a firearm since 2004, the admitted period, and their information has been used by the government. So we have nothing speculative. But you're not disputing that they can use that data for permissible reasons. That is correct. All right. How have your clients been injured by the use of it for what you allege is an impermissible purpose? I mean, as I said to you at the outset, I gather you're not claiming that you're on the list or that you experienced any delay in purchasing the gun. That is correct, and I do not believe that we need to reach that far. What is your injury in fact? Breach of privacy, equitable distribute, excuse me, equal to. You agree that it can be used. So, I mean, it's not that this is private information. It is private information beyond the express statutory purpose for which the information is supplied and for which. What is the fact that if information can be used by the government, but they use it for more than they are authorized to do it, that that violates privacy in a way that's legally cognizable? What case should we look at for that? I believe that Your Honor should be looking to your own case of ACLU v. Clapper in 2015. You should be looking to the third department on PRISM in Shuhart v. President of the United States, Wikimedia. We have no standing in Clapper. But the issue of whether you are going to, as a court, give the government permission to use submitted information. What is the binding standing on the conduct you're complaining about? Washington v. Trump and the associated cases on the executive orders recently handed down would be a list coming through three different departments, right? And those are cases that are. Only to the extent in those cases that the court identified persons who would suffer an actual injury if certain aliens were not allowed to enter the United States. It's not clear. You're not alleging that any of your clients are on the terrorist list or that they have or would experience delay in purchasing the gun. We are not able to make that allegation because every one of the plaintiffs. That's what the problem in Clapper was. The inability to make the allegation meant that there was no standing. But then what you're saying is that it's permissible for the government 99.999, literally statistically in this case, percent of the time to simply use whatever information and American supplies to it for whatever purpose the government wants. There's certainly no notice on the forum for 473 that this information will be used for anything other than the nine disqualifying persons categories. You've reserved a couple of minutes rebuttal. Yes, we have. Thank you. May it please the court. Patrick number off on behalf of the government. The district court correctly held here that plaintiffs black standing as the district court explained. And my opposing counsel has reaffirmed several times today. Plaintiffs do not allege that they are listed as known or suspected terrorist. They don't do not even allege that they have ever had a firearm purchase delayed. And so they cannot identify any injury. They have suffered as a result of the conduct they seek to challenge. Now I'm happy to answer any questions you may have. But otherwise, we'll rest on our brief. Thank you. If I may come back to the hot seat for a moment. Your turn. In terms of the federal rules of civil procedure on a 12 B one appeal, we're here for a de novo review. And our claim is that the injury begins as soon as the information that is supplied, which I think we can all agree is personal information. Is shared beyond the statutory authority granted specifically by Congress to the A.T.F. and the FBI for a very specific use. Namely to ascertain whether the customer standing at the counter is a potentially disqualified person who is now permanently ineligible from the ownership use or possession of a firearm. The statute provides that the government can seek a warrant. If they believe that the person may be engaged in criminal activity. And they can make out their claim for a warrant. The statute provides for it. The statute also provides in its implementing regulations many times over the word privacy. So I can certainly cite to landmark cases like Roe versus Wade with a claim of the penumbra of privacy. But I have statutory privacy. Does the government look for determining mental health information? Disqualifying mental health information? Under the implementing regulations, you are required to have a court order. It is an involuntary commitment. Not a person who seeks voluntary treatment. And even the most recent information and guidance documents that have come out from DHHS. So how do you know where to look for that? You know, what state you're going to to look for that court order. Yes. Or what federal district you're going to. The court actually makes that NICS submission directly to the FBI upon entry of the order. Yeah. But saying, look, so your position would be all of your clients would fill out that information. And it would go to a judge. And they would issue a nationwide order saying provide us any mental health information. That's how that works? I'm sorry. I don't quite understand your question. We're going back to the one I'm asking you. Where do you look to find out whether you even need to look or get a court order for mental health information? Do you mean statutorily, Your Honor? You tell me. How's this statute, in your construct, how's it supposed to work? Somebody walks in and has been certified and has been involuntarily committed and is now out and wants to buy a handgun. And nobody knows that sitting there, and it certainly isn't put on the form. Where do you look to check that out? Right. So we're assuming that the individual on the 4473 checks no and lies, committing fraud. Is that what you're asking me? So the customer says, no, I've never been committed to a mental institution. The FFL, who is your dealer, then either makes a phone call or if they're involved in the e-file for the FFL, inputs into the computer system the basic information. Right. The ATF gets back remarkably quickly by basically saying this person isn't disqualified or we need to issue a complaint. But the ATF doesn't know that this person has been involuntarily committed. He's just come out of the woodwork. Well, the ATF does know if the government office or agency, whether state or federal, has reported those records to the FBI. Right, but they're not reported. And the problem that you raise, Judge, is actually... Is a huge problem, but let's go on. Different than the case that we're looking at today. The problem there is... Well, no, no, because you're saying... What you want us to say is that the government can't look at certain databases... Yes. ...to even find a hint of whether they should be looking further to get a court order to go get the mental health information. And I'm suggesting to you, as I did in my prior question when you were first up in the hot seat, as you put it, that the fly list we know from news reports sometimes contains names of people who just cannot control their emotions and act out at the gate, and then they're on the frequent flyer list, and then they don't understand why they can't fly from here to Columbus, Ohio, the next time they show up at the airport. And it seems to me that any logical law enforcement officer doing an investigation might say, Hey, you know, that person's on the frequent flyer list or on the terrorist watch list, and that's what it ends up indicating that that person may have a mental health problem. Now I'm going to go see. And you're saying the government can't do that using that information. I am, but there are two things going on here that may amount to statutory deficits that need to go back to Congress. One is that since the Brady Act was enacted in 1993, it has always been voluntary. For Federal and State. And the Brady Act requires background checks. It does require background checks. It statutorily requires background checks. No, but Judge Rady. And the — excuse me. The NCIC and its files were created in order to implement that requirement. You are correct. And then the KST file, the known terrorist file, resides in the NCIC. It's not to be confused with the TSDB, which is a fuller consolidated watch list of which KST is a subset. But this KST file is in NCIC in order to implement the Brady requirement for a background check. So I'm having trouble understanding how you argue that, you know, they're just willy-nilly conducting searches here when this is how the whole system was set up. The system is set up for a mandatory background check. The submission of records is voluntary. That is the point I'm trying to make to Justice Paul's question of how is — But the KST was put in because it was deemed relevant. And you're not able to show us that this is a file that's totally irrelevant. You know, it's not people's third-grade report cards. It's that they are on known terrorist lists, which seems to fit any number of the categories that 922G says could disqualify you from being able to purchase a gun. Illegal aliens, people who've renounced their citizenship, any number of people could be on terrorist watch lists. It seems quite apt. What's the problem? Well, this court, the Second Circuit in particular, does seem to be the court that has had the most cases concerning the fact that there is no known metric and that there is a due process question involved in any of the lists, whether we want to call it any one of the acronyms that we've been using this morning. Whereas when you look specifically at 28 CFR Section 25.2, which is your definitions for the databases to which the FBI may look, it specifically references where those records relate to a federal or state disqualifying act. Thank you. Thank you. Thank you both. Thank you, Your Honors, for your time. We will reserve decision.